IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Civil Action No.: 3:26-cv-370-KDB-WCM

| | |
|---|---|
| SYREETA LANE,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |

Defendant Wells Fargo Bank, N.A. ("Wells Fargo" or the "Company"), by and through their undersigned counsel, and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Local Rule 7.1(c), submit this *Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Complaint*. Plaintiff purports to bring claims for failure to accommodate, retaliation, and hostile work environment under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., and for interference and retaliation under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq*. These claims fail as a matter of law, as the Complaint's factual allegations do not plausibly support any violation of the ADA or FMLA.

Although Plaintiff repeatedly characterizes Wells Fargo's actions as discriminatory, retaliatory, and unlawful, the Complaint alleges a far more straightforward set of facts: Plaintiff, who was diagnosed with Multiple Sclerosis in 2015, requested to work remotely, full-time, as an accommodation. Wells Fargo approved Plaintiff's requests to continue her remote-work arrangement until October 31, 2024. In August 2024, after Plaintiff requested a one (1) year extension of her remote work arrangement, Wells Fargo informed Plaintiff that the Company would allow Plaintiff to work remotely full-time through October 31, 2024, but it expected her to begin to gradually return to in-office work by November 2024. Shortly thereafter, Plaintiff stopped

working and went out on disability leave. She stopped working months before the return-to-office requirement was scheduled to take effect and was never required to return to in-person work. She remains on leave to date. As Plaintiff was provided a reasonable accommodation (and fails to plausibly allege that she was a "qualified individual" under the ADA), her failure to accommodate claim fails as a matter of law.

Her remaining claims are similarly flawed. Plaintiff does not plausibly allege that she engaged in protected activity or suffered a materially adverse employment action. She does not allege facts sufficient to show causation, or that Wells Fargo interfered with any FMLA benefit. Instead, the Complaint relies on Plaintiff's subjective disagreements with her supervisor's views of her performance, speculative assertions of retaliatory motive, and conclusory allegations unsupported by well-pleaded facts. Because Plaintiff has not alleged any entitlement to relief, and for the reasons set forth more fully below, her claims should be dismissed *with prejudice*, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## STATEMENT OF RELEVANT FACTS[1]

### I. OVERVIEW OF PLAINTIFF'S EMPLOYMENT AND INITIAL ACCOMMODATION REQUESTS

Plaintiff was hired by Wells Fargo in January 2008 and began working as a Senior Lead auditor in the Company's Internal Audit Department in August 2013. (ECF No. 1 at ¶ 16). In December 2014, Plaintiff was diagnosed with Multiple Sclerosis ("MS"), a chronic neurological condition that affects the central nervous system and substantially limits Plaintiff's ability to walk, sleep, concentrate, operate major bodily functions, think, and work. (*Id.* at ¶ 30). Plaintiff

[1] Purported facts are drawn from the Complaint without admitting the truth of any such allegation, consistent with the requirement under Rule 12(b)(6) that the Court accept Plaintiff's well-pleaded, non-conclusory factual allegations. Plaintiff's conclusory statements and legal conclusions are not afforded such weight. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

informed Wells Fargo of her condition in 2015. (*Id.* at ¶ 29). Three years later, she was promoted to a Lead Audit Manager position; Plaintiff remained in this position throughout her employment with the Company. (*Id.* at ¶¶ 18-19).

Plaintiff alleges that MS compromises her immune system, and that a shared open-office environment poses a risk to her health and safety. (*Id.* at ¶ 33). In 2020, during the COVID-19 pandemic and approximately six (6) years after she was first diagnosed, Plaintiff requested to work remotely on a full-time basis, and to take intermittent leave for medical appointments, treatment, and symptom flare-ups. (*Id.* at ¶ 35). Plaintiff renewed her requests for leave and remote-work on an annual basis, in 2021, 2022, and 2023. (*Id.* at ¶ 37). Wells Fargo granted these accommodations, permitting Plaintiff to work remotely for the one (1) year period following each such request. (*Id.* at ¶¶ 37-38). Plaintiff took a continuous leave of absence under the FMLA from November 11, 2022 through March 12, 2023. (*Id.* at ¶¶ 41-42).

## II. PLAINTIFF'S ONGOING PERFORMANCE ISSUES

### A. <u>2023</u>

In or around July or August 2023, four (4) to five (5) months after she returned from leave, Plaintiff received an "Inconsistently Meets Expectation" rating on her 2023 mid-year performance evaluation. (*Id.* at ¶ 42). This, Plaintiff claims, was her "first negative performance review," as she had received "Meets" ratings on every other evaluation since her promotion to the Lead Audit Manager role. (*Id.* at ¶ 41). The 2023 mid-year evaluation was completed by Audit Director Jona Mendoza, who had previously issued Plaintiff a "Meets" rating on her 2022 year-end performance evaluation. (*Id.* at ¶¶ 41, 42).

Plaintiff began reporting to Senior Audit Manager Dennis Aquino on August 27, 2023. (*Id.* at ¶¶ 26, 47). Plaintiff, who acknowledges receiving negative feedback on at least one (1) audit

engagement in 2023, received a "Needs Improvement" rating on her 2023 year-end performance evaluation. (*Id.* at ¶¶ 51-52). According to Plaintiff, Mr. Aquino's evaluation relied solely on negative feedback Plaintiff had received from Auditor-in-Charge Ann Poquiz, who had been critical of Plaintiff's work on a nearly two (2) month audit project. (*Id.* at ¶¶ 51, 54-55, 57).

**B. <u>2024</u>**

Plaintiff selectively quotes from certain engagement feedback she received in 2024, which she claims is demonstrative of her "good performance" during this period. (*Id.* at ¶ 59). She does not allege that this quoted feedback is a comprehensive representation of all her work during 2024, nor does she address whether she also received any negative or critical feedback during this time (*Id.*). Regardless, Mr. Aquino issued Plaintiff an informal performance warning in April 2024 and "assigned her a negative rating in her 2024 mid-year review." (*Id.* at ¶ 60). While Plaintiff claims that Mr. Aquino "disregarded the documented record of strong performance entirely, neither incorporating the favorable engagement feedback into her formal evaluations nor acknowledging it in any of his conversations or performance updates," she does not allege that the content of her warning and/or the 2024 mid-year review were false.

Mr. Aquino was critical of Plaintiff's work, telling her "throughout 2023 and 2024" that she was not "doing [her] job" and that he was "going to fire [her]." (*Id.* at ¶ 64). When Plaintiff asked why Mr. Aquino felt she was not doing her job or why he wished to fire her, Mr. Aquino stated that he had spoken with "unnamed members of leadership who had said she was not performing, and that he intended to rely on what they said," but did not provide further detail. (*Id.* at ¶¶ 64-65).

When completing her 2024 mid-year evaluation, Plaintiff raised various concerns about Mr. Aquino's purported "poor leadership, lack of communication, and the manner in which her

2023 year-end performance rating had been handled." (*Id*. at ¶ 67). She does not allege that she complained about any concerns of discrimination or retaliation for requesting an accommodation or taking leave under the FMLA.

### III. PLAINTIFF'S 2024 REQUEST TO WORK REMOTELY, CONTINUED PERFORMANCE ISSUES, AND LEAVE

In or around June of 2024, Plaintiff requested to continue her remote work accommodation through July 2025. (*Id*. at ¶ 70). As in years past, Plaintiff also made a request for intermittent leave. (*Id*. at ¶ 71). In or around August 2024, Myeisha Henderson, Plaintiff's "Accommodations Management representative," told Plaintiff that her accommodation request was complete and "should be fully approved, pending final approval from Mr. Aquino." (*Id*. at ¶ 79). On August 2, 2024, Ms. Henderson informed Plaintiff that Wells Fargo would permit Plaintiff to work remotely on a full-time basis through October 31, 2024, at which point she would be gradually expected to return to the office. (*Id*. at ¶¶ 80-81). Under the proposed gradual work arrangement, Plaintiff would report to the office one (1) day per week in November 2024, two (2) days per week in December 2024, and three (3) days per week in January 2025. (*Id*. at ¶ 81). Plaintiff emailed Ms. Henderson, stating "I thought the accommodation request is for 1 year (to July 2025), however below says 3 months. Could you let me know what change[d] in the duration [of] time since we last spoke?" (*Id*. at ¶ 86) (brackets in original). Ms. Henderson contacted Plaintiff and informed her that Mr. Aquino had not approved "full-time accommodation," and that Plaintiff would have to "gradually start coming back into the office." (*Id*. at ¶ 85).

On August 9, 2024, Mr. Aquino informed Plaintiff that he was putting Plaintiff on a formal corrective action. Mr. Aquino informed Plaintiff that she should "leave the [C]ompany" because he was "going to terminate [her] unless she demonstrated Auditor-in-Charge performance on two specific audits." Plaintiff subsequently went out on leave. (*Id*. at ¶ 97). She applied and was

approved for short-term disability (STD) benefits, effective August 27, 2024, and transitioned to long-term disability (LTD) benefits in February 2025. (*Id.* at ¶¶ 99, 105). Plaintiff remains out on leave, receiving LTD benefits to date, as she is unable to work. (*Id.* at ¶¶ 103, 107).

**STANDARD OF REVIEW**

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2000)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Instead, the "plaintiff must provide sufficient detail to show that [she] has a more-than-conceivable chance of success on the merits." *Upstate Forever v. Kinder Morgan Energy Partners, L.P.*, 887 F.3d 637, 645 (4th Cir. 2018) (cleaned up), *vacated on other grounds*, 140 S.Ct. 2736 (2020). While a plaintiff is not required to plead a *prima facie* case, courts look to the *prima facie* case for guidance in determining whether she has alleged sufficient facts to raise her right to relief above the speculative level. *See, e.g.*, *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

"Determining whether a complaint states a plausible claim for relief" is a "context-specific task" that requires a court "to draw upon its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The Court must accept the factual allegations as true and construe the Complaint in the light most favorable to Plaintiff, but it is not bound by "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts. Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (2000). Legal conclusions

"couched as a factual allegation" are insufficient. *Twombly*, 550 U.S. at 555. Where, as here, the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and should be dismissed. *Iqbal,* 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## ARGUMENT

### I. PLAINTIFF'S FAILURE TO ACCOMMODATE CLAIM SHOULD BE DISMISSED, AS PLAINTIFF DOES NOT PLAUSIBLY ALLEGE THAT SHE WAS A "QUALIFIED INDIVIDUAL" OR THAT SHE WAS DENIED AN ACCOMMODATION[2]

To state a failure to accommodate claim, Plaintiff must plausibly allege both that "with reasonable accommodation she could perform the essential functions of [her] position" and "that [Wells Fargo] refused to make such accommodation. *Wilson v. Dollar General Corp.*, 717 F.3d 337, 345 (4th Cir. 2013).[3] She has not. Accepting the Complaint's allegations as true, Wells Fargo provided Plaintiff with a full-time remote-work accommodation through and including the day she stopped working and went out on medical leave. This requires dismissal of her failure-to-accommodate claim, both because she does not plausibly allege that she could perform the essential functions of her position with the accommodation she requested and because she does not plausibly allege that Wells Fargo refused to provide a reasonable accommodation.

[2] Plaintiff also alleges that she needed intermittent leave as an accommodation, but does not allege that Wells Fargo denied her such leave. At most, the Complaint alleges that the communication approving Plaintiff's request for full-time remote work did not specifically reference intermittent leave, and that she was not provided with the requisite notices of her rights under the FMLA. (ECF No. 1 ¶ 82). Because Plaintiff alleges no facts plausibly suggesting that Wells Fargo denied intermittent leave, Wells Fargo addresses those allegations in connection with Plaintiff's FMLA claims rather than her ADA failure-to-accommodate claim. To the extent the Court construes the Complaint otherwise, any such claim fails for the same reason Plaintiff's remote-work theory fails: her own allegations establish that she could not perform the essential functions of her position even while receiving the accommodations she requested.

[3] Plaintiff must also allege that she is an individual with a disability within the meaning of the statute, and that Wells Fargo had notice of her disability. *Wilson,* 717 F.3d at 345. Neither is disputed for purposes of this motion.

## A. Plaintiff Must Allege That She Was A "Qualified Individual" With A Disability, Which She Has Not Done.

Wells Fargo does not dispute that Plaintiff has a disability. But "[n]ot all individuals with disabilities are entitled to reasonable accommodations under [the ADA]." *Redding v. Noem*, 168 F.4th 203, 206-207 (4th Cir. 2026). Employers are only required to provide reasonable accommodation to "qualified individual[s]." *Haggins v. Wilson Air Ctr., LLC*, 163 F.4th 872, 877 (4th Cir. 2026).

As relevant here, a "qualified individual" is an employee who can perform the essential functions of her position, with or without a reasonable accommodation. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999); 42 U.S.C. § 12111(8). If an employee cannot perform the essential functions of her job, even with a reasonable accommodation, she is not a "qualified individual, rendering the ADA's protections inapplicable." *See Haggins*, 163 F.4th at 880.

Accordingly, Plaintiff has to plead that she was a "qualified individual" in order to bring a viable failure to accommodate claim. *Stanley v. City of Sanford*, 606 U.S. 46, 65 (2025) (a plaintiff must "plead and prove" that she was a qualified individual "at the time of the alleged act of disability-based discrimination.");[4] *see also Wilson*, 717 F.3d at 345. To do so, Plaintiff must allege enough facts to show that her requested accommodation (full-time remote work) would have enabled her to perform the essential functions of her position. *Jacobs v. N.C. Admin Office of the Courts*, 780 F.3d 562, 581 (4th Cir. 2015).[5] She has not.

---

[4] Under the ADA, discrimination is defined to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability". 42 U.S.C. § 12112(b)(5)(A).

[5] For purposes of this Motion only and given the limitations of Rule 12(b)(6), Wells Fargo will not contest that remote work could be a reasonable accommodation. We dispute that it was reasonable, and note that providing Plaintiff with a remote accommodation during and shortly after the COVID-19 pandemic is not an indication that the essential functions of her position *could* all be done remotely.

**B. Based On The Allegations In The Complaint, Plaintiff Could Not Perform The Essential Functions Of Her Position Even With A Full-Time Remote Work Accommodation.**

According to the Complaint, Plaintiff went out on disability leave on August 27, 2024, as she was no longer able to work. (*Id.* at ¶¶ 81, 97, 99). At the time she began that leave, Plaintiff was working remotely full-time; she was not scheduled to return to the office until November 1, 2024, over two (2) months later. (*Id.* at ¶¶ 81). Taking these allegations as true, Plaintiff cannot plausibly allege that a full-time remote work accommodation would have enabled her to perform the essential functions of her position, as she had that accommodation and was still unable to work. *See, e.g., Haggins*, 163 F.4th at 880 (plaintiff was not a qualified individual, as even with the hybrid remote schedule she proposed, she "could not show up to work to perform her position's essential functions").

This is fatal to her claim. As the Fourth Circuit recently explained, where a plaintiff's allegations establish that she cannot perform the essential functions of her position, with or without accommodation, she "essentially pleads that she is not a 'qualified individual' for the [position she held], and thus her failure-to-accommodate claim fails on its own terms." *Redding*, 168 F.4th at 208 (affirming dismissal on Rule 12(b)(6) motion where plaintiff's complaint conceded she could not perform the essential functions of the role, with or without accommodation).[6] That is precisely the case here. By alleging that she had to stop working and go out on leave months before she was ever expected to return to the office, Plaintiff has foreclosed any inference that she could have performed the essential functions of her position with full-time remote work. Her own allegations make clear that she was not a qualified individual. Her claim should be dismissed.

---

[6] While *Redding* addresses a failure to accommodate claim under the Rehabilitation Act, courts analyze Rehabilitation Act claims under the same standards as the ADA. *See, e.g., Smith v. CSRA*, 12 F.4th 396, 412 n.9 (4th Cir. 2021).

### C. <u>Plaintiff Was Not Denied An Accommodation, And Her Claim That She Had To Stop Working Because She Was Is Belied By Her Own Allegations.</u>

Even if Plaintiff had plausibly alleged that she was a qualified individual, her claim fails because she does not allege that Wells Fargo refused to provide a reasonable accommodation. Plaintiff requested to continue full-time remote work. Wells Fargo approved that request. That the Company approved the request for five (5) months, as opposed to the full year Plaintiff preferred, does not give rise to an actionable failure to accommodate claim.[7]

As an initial matter, Wells Fargo was not required to provide Plaintiff with the accommodation she requested or preferred. *Hannah v. UPS*, 72 F.4th 630, 636 (4th Cir. 2023). It was required to provide an effective accommodation. *See Id.* Which is precisely what it did—a shorter period of full-time remote work, followed by a gradual return to the office. That Plaintiff believed this accommodation would not adequately address her future medical needs is unfortunate, but ultimately irrelevant.[8]

Employers must accommodate employees' existing disability-related limitations. They are not required to provide accommodations indefinitely or grant accommodations based on speculation about an employee's future medical needs. The Fourth Circuit is clear on this point, explaining in *Myers v. Hose* that the reasonable accommodation provisions "contain no reference to an individual's *future* ability to perform the essential functions of his position. To the contrary, they are formulated in the present tense, framing the precise issue as whether an individual 'can' (not 'will be able to') perform the job with reasonable accommodation." *Myers v. Hose*, 50 F.3d

---

[7] Plaintiff submitted her request in June 2024, at the expiration of her last remote work accommodation. She was then approved to work remotely through October 31, 2024. (ECF No. 1 at ¶¶ 62, 91).

[8] While Plaintiff accuses Wells Fargo of not engaging in the interactive process, Plaintiff does not allege that she proposed alternatives for the Company to consider, spoke with her medical provider about what steps, if any, she could take to return to some in-office work, or provided additional information to Wells Fargo. Regardless, there is no stand-alone claim for failing to engage in the interactive process. *Coleman v. Kettler Mgmt.*, Civil Action No. 1:22-cv-84 (RDA/JFA), 2022 U.S. Dist. LEXIS 171110, at *13 (E.D. Va. Sep. 21, 2022).

278, 283 (4th Cir. 1995) (emphasis in original). Accordingly, a reasonable accommodation is one that enables the employee to perform the essential functions of his job "presently, or in the immediate future." *Id.*

Under *Myers*, the relevant question is whether the accommodation provided by Wells Fargo enabled Plaintiff to perform the essential functions of her position at the time it was provided. According to the Complaint, Wells Fargo offered Plaintiff an additional five (5) months of full-time remote work. Plaintiff does not allege that this accommodation failed to address her then-existing limitations. Rather, she alleges that Wells Fargo declined to guarantee that accommodation through July 2025. But the ADA does not require employers to provide accommodations based on speculation regarding an employee's future medical needs. If Plaintiff was unable to return to in-person work upon expiration of the approved remote work accommodation, Wells Fargo would have been required to assess what accommodations, if any, were available at that time. The ADA did not require Wells Fargo to predetermine those future accommodation needs months in advance.

## II. PLAINTIFF'S CLAIM FOR RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT SHOULD BE DISMISSED, AS PLAINTIFF DOES NOT PLAUSIBLY ALLEGE ANY OF THE ELEMENTS NECESSARY TO STATE A CLAIM

### A. Plaintiff's Retaliation Claim Fails To The Extent It Relies On Acts Occurring More Than 180 Days Before The Filing Of Plaintiff's Administrative Charge.

As a precondition to filing suit under the ADA, a plaintiff must first file a timely charge of discrimination with the U.S. Equal Employment Opportunities Commission ("EEOC"). 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1). In North Carolina, a charge must be filed with the EEOC within 180 days of the alleged discriminatory or retaliatory act. *Sexton v. Skyline Membership Corp.*, No. 5:16-CV-00044-RLV-DSC, 2017 WL 1386019, at *3 (W.D.N.C. Apr. 12, 2017) (citing 42 U.S.C. § 12117(a) and 42 U.S.C. § 2000e-5(e)(1)). "[O]nly incidents that took place

within the timely filing period are actionable." *Sanger v. NVR, Inc.*, No. 5:24-CV-438-D, 2025 U.S. Dist. LEXIS 136634, at *6 (E.D.N.C. July 17, 2025) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)).

Here, Plaintiff filed a charge with the EEOC on December 5, 2024. (ECF No. 1. at ¶ 12). Accordingly, any incidents alleged to have occurred prior to June 8, 2024 are outside of the 180-day look back period and untimely as a matter of law. The Complaint contains numerous undated allegations. To the extent Plaintiff relies on those allegations to support her retaliation claim, she has not plausibly alleged that they fall within the applicable limitations period. With respect to those allegations for which a date or time period is provided, the only alleged acts to have occurred within the timely filing period (and thus the only acts that can support an actionable retaliation claim) are the formal corrective action issued to Plaintiff on August 9, 2024, and the purported denial of her remote accommodation request on August 2, 2024. Everything else is time barred. *See Agolli v. Off. Depot, Inc.*, 548 F. App'x 871, 875 (4th Cir. 2013).

### B. With Respect To Her Timely Allegations, Plaintiff Does Not Plausibly Allege That She Was Retaliated Against For Engaging In Protected Activity.

Plaintiff's retaliation claim fails because the Complaint does not plausibly allege any of the elements necessary to state a claim. Plaintiff must allege (1) that she engaged in protected conduct, (2) that she suffered an adverse action, and (3) that there is a causal link between the two. *Reynolds v. Amer. Nat. Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012) (citing *A Soc'y Without a Name v. Commonwealth of Va.*, 655 F.3d 342, 350 (4th Cir. 2011)). She fails at every step. Much of the conduct Plaintiff characterizes as protected activity is not protected as a matter of law, the purported adverse acts are not materially adverse, and there are no factual allegations to support an inference of causation.

1. Plaintiff's generalized complaints are not protected activity

For purposes of the ADA, protected activity includes requesting an accommodation and "oppos[ing] any act or practice made unlawful" by the statute. *Schmitz v. Alamance-Burlington Bd. of Educ*., No. 1:18CV910, 2020 U.S. Dist. LEXIS 32699, at *36 (M.D.N.C. Feb. 26, 2020) *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 706 (4th Cir. 2001) (accommodation requests protected activity); 42 U.S.C. § 12203(a). Here, Plaintiff alleges that she was retaliated against for requesting remote work accommodations, "opposing Defendant's denial of her 2024 accommodation request," and "raising concerns about the manner in which her accommodation and her performance were being handled." (ECF No. 1 at ¶ 130). Wells Fargo does not dispute that Plaintiff's requests for accommodation constituted protected activity. But that is the only protected activity alleged in the Complaint. There is no allegation that Plaintiff engaged in protected oppositional conduct, and any claim predicated on such conduct must be dismissed.

Plaintiff claims that she "oppos[ed]" the purported denial of her 2024 accommodation request.[9] But the Complaint alleges only that Plaintiff emailed Ms. Henderson to ask why her accommodation had been approved for three (3) months rather than a longer period. Asking a routine question about the scope or duration of an accommodation is not protected activity, as it does not "communicate[] … a belief that the employer has engaged in a form of employment discrimination". *Crawford v. Metro Gov't of Nashville & Davidson Cty.*, 555 U.S. 271, 276 (2009).

Plaintiff's allegation that she "raise[d] concerns" about her accommodation and performance fares no better. Plaintiff provides no detail regarding these purported concerns and therefore does not plausibly allege that they constituted protected activity. To the extent Plaintiff

[9] As explained above, Wells Fargo did not deny her request.

is referring to her 2024 self-evaluation, she does not allege that she complained about disability discrimination or conduct prohibited by the ADA. She alleges only that she criticized Mr. Aquino's leadership, communication, and the handling of her 2023 performance review. (ECF No. 1 ¶ 67). Such generalized workplace complaints do not constitute protected activity under the ADA. *Freilich v. Upper Chesapeake Health*, 313 F.3d 205, 216-217 (4th Cir. 2002); *Ghumman v. Boeing Intel. & analytics, Inc.*, No. SAG-23-3371, 2025 U.S. Dist. LEXIS 8320, at *9-10 (D. Md. Jan. 16, 2025).

2. Plaintiff has not alleged an actionable adverse action

Nor has Plaintiff alleged an actionable adverse action (either timely or not). For purposes of a retaliation claim, an adverse action must be "materially adverse," i.e., one that would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Plaintiff claims that Mr. Aquino retaliated against her by issuing her negative performance evaluations, criticizing her performance, placing her on a corrective action, threatening to terminate her employment, and denying her request for an accommodation. Even if these allegations were true, they are insufficient to support a retaliation claim. Negative performance evaluations, standing alone, are ordinarily not materially adverse actions. Nor are corrective actions, unwarranted reprimands or threats of termination. *See Blount v. Ajinomoto Health & Nutrition*, No. 20-cv-00356, 2020 U.S. Dist. LEXIS 161580, at *8 (E.D.N.C. Aug. 14, 2020) ("But a write up by itself does not rise to the level of an adverse employment action").

As for Plaintiff's claim that Wells Fargo retaliated against her by denying her accommodation request, the "mere denial of a request for reasonable accommodation cannot be an adverse action giving rise to a separate ADA retaliation claim lest every time an employee was

denied a requested accommodation, [she] would be able to 'double dip' by asserting both the ADA failure-to-accommodate and ADA retaliation claims." *Johnson v. Md. Transit Admin.*, No. 19-cv-2523, 2021 U.S. Dist. LEXIS 39145, at *15-16 (D. Md. Mar. 2, 2021). Plaintiff cannot transform her failure to accommodate claim into a standalone retaliation claim.

3. <u>Plaintiff does not allege causation</u>

Assuming, arguendo, that Plaintiff adequately alleged that she engaged in protected activity and was subjected to a materially adverse employment action, she has not alleged a causal connection between the two. Causation may be established through temporal proximity, facts suggesting retaliatory motive, or a combination of the two. *Laurent-Workman v. Wormuth*, 54 F.4th 201, 218–19 (4th Cir. 2022) (internal citation omitted). Where "temporal proximity" is relied on alone, the timing must be "very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) (per curiam). As the Fourth Circuit has recognized, even a two-month gap between the protected activity and the challenged action "weaken[s] significantly the inference of causation." *Laurent-Workman*, 54 F.4th at 219; *see also Horne v. Reznick Fedder & Silverman*, 154 F. App'x 361, 364 (4th Cir. 2005).

Here, Plaintiff alleges that she engaged in protected activity, and was later subjected to performance criticism with which she disagreed. But the Complaint contains no factual allegations plausibly connecting the two. The only timely acts occurred approximately two (2) months after her June 2024 accommodation request.[10] And beyond timing, the Complaint contains no factual allegations linking Plaintiff's accommodation requests to the challenged conduct. Plaintiff does not allege retaliatory comments, shifting explanations, departures from policy, or any other facts

[10] Although the corrective action may be temporally proximate to Plaintiff's purported opposition to the result of her accommodation request, Plaintiff has not plausibly alleged that this was protected activity.

suggesting that Mr. Aquino acted because of her requests for accommodation. Instead, the Complaint alleges only Plaintiff's disagreement with her manager's assessment of her performance. Such speculation is insufficient to support a plausible inference of retaliation. Accordingly, Plaintiff's retaliation claim should be dismissed.

## III. PLAINTIFF'S CLAIM FOR A HOSTILE WORK ENVIRONMENT UNDER THE AMERICANS WITH DISABILITIES ACT SHOULD BE DISMISSED, AS PLAINTIFF DOES NOT ALLEGE SUFFICIENTLY SEVERE OR PERVASIVE CONDUCT

To state a hostile work environment claim, Plaintiff must allege, among other things, that the purportedly harassing conduct was sufficiently severe or pervasive so as to alter the terms and conditions of her employment. *Pueschel v. Peters*, 577 F.3d 558, 565 (4th Cir. 2009). She has not done so. Plaintiff alleges that Mr. Aquino criticized her performance, threatened termination, issued "predetermined negative performance evaluations," denied her preferred accommodation, and failed to give her a meaningful opportunity to improve.[11] These allegations do not describe a workplace "permeated with discriminatory intimidation, ridicule, and insult." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993).

At most, Plaintiff alleges a personality dispute with her supervisor and a dispute over her performance. This is not the type of conduct that can support a hostile work environment. Courts in this Circuit routinely reject hostile work environment claims based on comparable, and often more severe, allegations. *See, e.g.*, *Hakeem v. Mayorkas*, No. 1:24-CV-955-RDA-WEF, 2025 U.S. Dist. LEXIS 14303, 2025 WL 310123, at *21-23 (E.D. Va. Jan. 27, 2025); *Short v. Berryhill*, 2019 WL 4643806, at *41-42 (D. Md. Sept. 24, 2019) (holding that placement on a performance plan,

---

[11] A hostile work environment cannot be based on discrete employment acts, such as the alleged failure to accommodate. Regardless, even if the Court considered this allegation, Plaintiff has not alleged the type of "discriminatory intimidation, ridicule, and insult" necessary to state such a claim. *See, e.g., Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993).

negative job evaluations, repeated criticism of plaintiff's performance, her supervisor's refusal to answer her questions verbally, and a "series of aggressive emails" did not amount to hostile work environment); *Combs-Burge v. Rumsfeld*, 170 F. App'x 856, 862 (4th Cir. 2006) (counseling about job performance deficiencies is not the sort of conduct to create a hostile work environment). Because Plaintiff alleges only criticism, disciplinary measures, and disagreements regarding her performance and accommodations, she fails to plausibly allege a hostile work environment as a matter of law.

## IV. PLAINTIFF'S INTERFERENCE CLAIM UNDER THE FAMILY AND MEDICAL LEAVE ACT SHOULD BE DISMISSED, AS SHE DOES NOT PLAUSIBLY ALLEGE INTERFERENCE WITH ANY FMLA BENEFIT OR HARM

To make out an "interference" claim under the FMLA, an employee must allege that (1) she was entitled to an FMLA benefit; (2) her employer interfered with the provision of that benefit; and (3) that interference caused harm. *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015).[12] Plaintiff does not plausibly allege interference with any FMLA benefit. She does not, for example, allege that Wells Fargo denies any request for leave, prevented her from taking leave, or caused her to forfeit any FMLA benefit. Instead, she bases her interference claim on the Company's alleged failure to provide her with a notice of eligibility and notice of rights and responsibilities as required by 29 C.F.R. § 825.300 (the "FMLA notices"), its purported response to her request for intermittent leave, and various performance-related actions that she characterizes as adverse. (ECF No. 1 ¶¶ 166-176). None of these actions states a claim for FMLA interference.

[12] We dispute that Plaintiff has alleged willfulness, and thus the two-year statute of limitations should apply, but have nevertheless included those allegations arising before May 11, 2024. 29 U.S.C. § 2617(c).

### A. <u>**Plaintiff Has Not Plausibly Stated A Claim Based On The Alleged Failure To Provide Notice.**</u>

Plaintiff's claim that Wells Fargo failed to provide her with proper notice of her FMLA rights fails for at least two independent reasons. First, Plaintiff does not allege that she had an "entitlement" to receive the requisite FMLA notices. While she alleges that her June 2024 accommodation request put Wells Fargo on notice that Plaintiff might need leave for an FMLA qualifying reason, the regulations require that Wells Fargo provide notice "at the commencement of the first *instance of leave* for each FMLA-qualifying reason in the applicable 12-month period." 29 C.F.R. §§ 825.300(b)(1) (emphasis added). Plaintiff does not allege that she actually took leave after June 2024, and if she did, whether that leave was already covered by another notice period. She has, therefore, not plausibly alleged that she is entitled to the benefit (FMLA notices) she claims she was denied.

Second, and more fundamentally, Plaintiff does not allege that she was harmed by the purported notice deficiency. It is not enough to allege a technical violation of the FMLA. *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015). The failure to provide notice only constitutes actionable FMLA interference "where the employee is prejudiced such that he is 'unable to exercise [the right to FMLA leave] in a meaningful way.'" *Owens v. Northwood Ravin, LLC*, 2022 U.S. Dist. LEXIS 231562, at *15 (W.D.N.C. Dec. 23, 2022) (quoting 29 C.F.R. § 825.300(a)-(b), (e)) (brackets in original). Here, Plaintiff does not allege that she lost compensation or benefits, structured leave differently, was denied leave she would have otherwise taken, or suffered any other concrete harm caused by not receiving the FMLA notices or any other act of alleged interference.

### B. <u>Plaintiff Does Not Plausibly Allege Interference With Intermittent Leave</u>

Plaintiff does not allege that she attempted to take intermittent leave and was denied, that she refrained from taking leave because she lacked information regarding her rights, that she lost any FMLA benefit, or that she suffered any other prejudice traceable to the alleged notice omission. Indeed, Plaintiff alleges only that the lack of notice "deprived Plaintiff of information she was entitled to receive" and prevented her from making "fully informed decisions" regarding her leave rights. (ECF No. 1 ¶ 175). Such conclusory allegations are insufficient to state a plausible interference claim. Because Plaintiff does not plausibly allege either entitlement to the notices or resulting prejudice, her notice-based interference claim should be dismissed.

Plaintiff alleges that Wells Fargo interfered with her right to take intermittent leave by "imposing a return-to-work schedule," failing to engage in a meaningful process regarding the intermittent leave component of her accommodation request, and allowing Mr. Aquino to exercise veto authority over the accommodation decision. (*Id.* at ¶ 176). Plaintiff does not allege how any of these purported actions interfered with her rights under the FMLA, nor is there any inference of interference that can be reasonably drawn from the Complaint. Plaintiff does not allege that she requested intermittent leave and was denied it. Nor does she allege that she was prevented from taking leave, discouraged from taking leave, or otherwise "chill[ed]" from exercising her rights under the FMLA. *Fortune v. Gaylor, Inc.*, Case No. 19-cv-346, 2020 U.S. Dist. LEXIS 117687, at *9 (W.D.N.C. May 28, 2020) (quoting *Snipes v. Sw. Virginia Reg'l Jail Auth.*, 350 F.Supp.3d 489, 493 (W.D.Va. 2018)). Absent factual allegations that Wells Fargo actually denied or interfered with Plaintiff's ability to take protected leave, Plaintiff has not plausibly alleged interference under § 2615(a)(1).

### C. <u>Plaintiff Cannot Repurpose Her FMLA Retaliation Claim Into An FMLA Interference Claim</u>

Finally, Plaintiff cannot rephrase an FMLA retaliation claim as an FMLA interference claim. The gravamen of an interference claim is the denial or restraint of an FMLA benefit. *Adams*, 789 F.3d at 427. Plaintiff's allegations concerning performance evaluations, corrective action, and alleged hostility by Mr. Aquino do not involve the denial of leave or any other FMLA entitlement. To the extent Plaintiff contends those actions were taken because she exercised or sought to exercise FMLA rights, such allegations sound in retaliation, not interference. *Fortune*, 2020 U.S. Dist. LEXIS 117687, at *12 (noting that while the Fourth Circuit has not addressed this issue, numerous courts within the Circuit have held using FMLA leave as a negative factor in employment actions must be asserted as a claim for FMLA retaliation, not interference). *Fortune*, 2020 U.S. Dist. LEXIS 117687, at *12 (citing *Downs v. Winchester Med. Ctr.*, 21 F.Supp.3d 615, 618-19 (W.D. Va. 2014) (collecting cases)).

## V. PLAINTIFF'S RETALIATION CLAIM UNDER THE FAMILY AND MEDICAL LEAVE ACT SHOULD BE DISMISSED, AS PLAINTIFF DOES NOT PLAUSIBLY ALLEGE RETALIATION

"Retaliation claims brought under the FMLA are analogous to those brought under Title VII." *Adams*, 789 F.3d at 422 (citations omitted). To state a retaliation claim under the FMLA, Plaintiff must plausibly allege that: (1) she engaged in protected activity; (2) Wells Fargo took an adverse action against her; and (3) there was a causal connection between the protected activity and the adverse action. *Id*. Plaintiff alleges that she engaged in protected activity by taking FMLA leave from November 2022 through March 2023 and by requesting intermittent leave in June 2024. (ECF No. 1 ¶ 183). Even assuming those allegations satisfy the first element, Plaintiff does not plausibly allege either an actionable adverse action or causation.

As an initial matter, many of the purportedly retaliatory acts (criticism of her performance, negative evaluations, an informal warning, and a corrective action) are not materially adverse as a matter of law, for the reasons set forth in Section (B)(2), above. Nor does Plaintiff sufficiently allege causation. As with her ADA retaliation claim, Plaintiff can allege causation through temporal proximity, facts suggesting a retaliatory motive, or a combination thereof. *Laurent-Workman*, 54 F.4th at 218-219. "When temporal proximity is the sole basis of establishing the requisite causal connection in a FMLA retaliation claim, a substantial lapse in time between the protected activity and termination belies any inference of a causal connection between the two." *Byington v. NBRS Fin. Bank*, No. CIV.A. GLR-12-705, 2013 U.S. Dist. LEXIS 105080, 2013 WL 3895033 at *8 (D. Md. July 26, 2013) ((citing *Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006).

Here, Plaintiff returned from FMLA leave in March 2023, and received her first negative performance review four (4) or five (5) months later. Such timing, standing alone, does not plausibly support an inference of retaliation. *See, e.g., Pascual v. Lowe's Home Centers, Inc.*, 193 F.App'x 229, 233 (4th Cir. 2006) (three- to four-month lapse between protected activity and termination "is too long to establish a causal connection by temporal proximity alone").

Nor does Plaintiff plausibly allege causation with respect to her June 2024 request for intermittent leave. The Complaint contains no factual allegations suggesting that Mr. Aquino or anyone else acted because Plaintiff sought leave. Plaintiff does not allege retaliatory comments, shifting explanations, departures from policy, or any other facts suggesting retaliatory motive. Instead, Plaintiff alleges only that she disagreed with Mr. Aquino's assessments of her performance and believed the resulting evaluations and corrective actions were unjustified. (*Id.* ¶¶

53-69, 93-96, 135-144). Such allegations are insufficient to support a plausible inference that any challenged action was taken because Plaintiff exercised rights protected by the FMLA.

Finally, Plaintiff's own allegations undermine any inference of causation. The Complaint alleges that concerns regarding Plaintiff's performance predated her June 2024 request for intermittent leave, including a negative 2023 mid-year review, a "Needs Improvement" year-end review, and an informal warning issued in April 2024. (*Id.* ¶¶ 42, 53, 61). Where the challenged conduct began before the alleged protected activity, temporal proximity alone cannot plausibly support an inference that the later protected activity caused the conduct to occur. *See Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) ("[W]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.").

Because Plaintiff has not plausibly alleged either a materially adverse action or a causal connection between any protected activity and the actions she challenges, her FMLA retaliation claim should be dismissed.

## CONCLUSION

For all of the foregoing reasons, Defendant requests that the Court GRANT its Motion to Dismiss Plaintiff's Complaint in its entirety WITH PREJUDICE.

Respectfully submitted, this 13th day of July, 2026.

**JACKSON LEWIS P.C.**

BY: /s/ *Margaret Zwicharowski*
MARGARET ZWICHAROWSKI
N.C. State Bar No. 61506
201 S. Tryon St., Suite 1200
Charlotte, NC 28202
Telephone: (980) 465-7241
Facsimile: (704) 333-7764
Email: Maggie.Zwicharowski@JacksonLewis.com

KATHRYN J. BARRY (*pro hac vice*)
3737 Glenwood Avenue, Suite 450
Raleigh, NC 27612

58 South Service Road, Suite 250
Melville, NY 11747
Telephone: (631) 247-4612
Email: Kathryn.Barry@JacksonLewis.com

*Attorneys for Defendants*

**NO USE OF ARTIFICIAL INTELLIGENCE CERTIFICATION**

The undersigned counsel hereby certifies that no artificial intelligence was employed in connection with the research for preparation of this memorandum, except for such artificial intelligence embedded in the standard online legal research sources Lexis, Westlaw, FastCase, and Bloomberg. Every statement and citation to an authority contained in this memorandum has been checked by an attorney in this case and/or a paralegal working at her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

**JACKSON LEWIS P.C.**

BY: /s/ *Margaret Zwicharowski*
MARGARET ZWICHAROWSKI
N.C. State Bar No. 61506
201 S. Tryon St., Suite 1200
Charlotte, NC 28202
Telephone: (980) 465-7241
Facsimile: (704) 333-7764
Email: Maggie.Zwicharowski@JacksonLewis.com

KATHRYN J. BARRY (*pro hac vice*)
3737 Glenwood Avenue, Suite 450
Raleigh, NC 27612

58 South Service Road, Suite 250
Melville, NY 11747
Telephone: (631) 247-4612
Email: Kathryn.Barry@JacksonLewis.com

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Civil Action No.: 3:26-cv-370-KDB-WCM

| | |
|---|---|
| SYRETA LANE,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | **CERTIFICATE OF SERVICE** |

The undersigned certifies that on July 13, 2026, the foregoing *Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Complaint* was electronically filed with the Clerk of the Court, using the CM/ECF electronic service system which will send notification of the filing to the following:

Kathryn Roseman
M. Anthony Burts II
P.O. Box 102
Newton, NC 28652
Katie@burtslaw.com
Anthony@burtslaw.com

*Attorneys for Plaintiff*

**JACKSON LEWIS P.C.**

BY: */s/ Margaret Zwicharowski*
MARGARET ZWICHAROWSKI
N.C. State Bar No. 61506
201 S. Tryon St., Suite 1200
Charlotte, NC 28202
Telephone: (980) 465-7241
Facsimile: (704) 333-7764
Email: Maggie.Zwicharowski@JacksonLewis.com

KATHRYN J. BARRY (*pro hac vice*)
3737 Glenwood Avenue, Suite 450
Raleigh, NC 27612

58 South Service Road, Suite 250
Melville, NY 11747
Telephone: (631) 247-4612
Email: Kathryn.Barry@JacksonLewis.com

*Attorneys for Defendants*

4932-8958-2780, v. 1