**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:26-CV-00370-KDB-MTO**

| | |
|---|---|
| **SYRENA LANE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**WELLS FARGO BANK, N.A.,**<br><br>**Defendant.** | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss (Doc. No. 9). The Court has carefully considered this Motion and the Parties' briefs. For the reasons discussed below, the Court will **GRANT in part and DENY in part** the Motion.

## I. LEGAL STANDARD

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 570; *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual

enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc*., 591 F.3d 250, 255 (4th Cir. 2009). Construing the facts in this manner, a complaint must only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (internal quotations omitted). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff Syreeta Lane ("Lane") alleges that Defendant Wells Fargo Bank, N.A. ("Wells Fargo") violated her rights as an employee under the Americans with Disabilities Act ("ADA") and Family and Medical Leave Act ("FMLA"). (Doc. No. 1, hereafter the "Complaint" or "Compl."). Plaintiff joined Wells Fargo in 2008. Compl. ¶¶ 2, 16. In August 2013, she transferred to the Internal Audit Department, where she worked as a Senior Lead Auditor. *Id.* ¶ 16. She was promoted to a management-level position eventually titled Lead Audit Manager in September 2018. *Id.* ¶ 18. In this role, Plaintiff was responsible for performing independent, objective assurance and risk management activities. *Id.* ¶ 19. Her audit work was conducted "entirely in a virtual environment throughout her entire tenure," and her clients were located "across the country," so her business communications were conducted "via telephone, email, or video conference." *Id.* ¶¶ 20-21.

Several Wells Fargo employees worked in Plaintiff's department or had a professional relationship with Plaintiff, including Jona Mendoza ("Mendoza"), as Audit Director or supervisor; Rose Ann Poquiz ("Poquiz"), as Auditor-in-Charge; and Dennis Aquino ("Aquino"), as Senior Audit Manager. *Id.* ¶¶ 22-27. Aquino became Plaintiff's supervisor on August 27, 2023. *Id.* ¶ 26.

In December 2014, Plaintiff was diagnosed with Multiple Sclerosis ("MS"), a chronic neurological condition that affects the central nervous system. *Id.* ¶ 28. She notified Wells Fargo of her diagnosis in "March or April of 2015." *Id.* ¶ 29. Because of her compromised immune system and other physical impairments related to MS, Plaintiff's physician determined that working in a shared office setting would be a significant medical risk to Plaintiff, making Plaintiff's remote work medically necessary. *Id.* ¶ 32.

In 2020, Plaintiff submitted a request for reasonable accommodation, seeking approval to work remotely on a full-time basis, as well as intermittent leave as needed for symptom flare-ups and treatment. *Id.* ¶ 35. Wells Fargo approved her request and, when Plaintiff later renewed the request, Wells Fargo approved one-year extensions in 2021, 2022, and 2023. *Id.* ¶¶ 36-37. During this period, Plaintiff performed the essential functions of her job with the teleworking accommodation, and she consistently received satisfactory performance ratings of "Meets Expectations" from multiple supervisors. *Id.* ¶¶ 39, 41.

Plaintiff went on approved FMLA leave from November 11, 2022, through March 12, 2023.[1] *Id.* ¶ 40. In July or August 2023, Plaintiff received her first negative performance review, when Mendoza rated Plaintiff as "Inconsistently Meets Expectations" in her mid-year performance review. *Id.* ¶ 42. This review covered Plaintiff's performance only after her return from FMLA leave, when her primary engagement was a Credit Sales & Trading – HGHY audit, which ran from May 5, 2023, to June 28, 2023. *Id.* ¶ 43. On that project, audit reviewer Timonthy King had positive feedback and did not note areas of concern regarding Plaintiff's performance. *Id.* ¶ 45.

In August 2023, Aquino became Plaintiff's supervisor. *Id.* ¶ 47. From August through November 28, 2023, Plaintiff participated in two audits for which she received positive

[1] The Complaint does not provide details of the circumstances surrounding this period.

engagement feedback, including formal and positive feedback from supervisor Daniel Saur. *Id.* ¶¶ 49-50. She also received negative engagement feedback from Auditor-in-Charge Poquiz. *Id.* ¶ 51. In her 2023 year-end performance review, Aquino rated Plaintiff as "Needs Improvement" because her "performance outcomes were significantly below expectations." *Id.* ¶ 53. Aguino's year-end review mirrored Mendoza's mid-year review. *Id.* ¶ 57.

Plaintiff alleges that even though she received numerous positive engagement feedback from multiple supervisors from Fall 2023 to Spring 2024, *see id.* ¶ 59, Aquino disregarded such documentation, issued her an Informal Warning for Performance in April 2024, and assigned her a negative rating in her 2024 mid-year review. *Id.* ¶ 57. According to Plaintiff, Aquino's "campaign of hostility extended well beyond" performance reviews, and he "repeatedly" told Plaintiff, "you're not doing your job" and "I'm going to fire you." *Id.* ¶ 64. In response to Plaintiff's requests for an explanation, Aquino told her that leadership personnel said that Plaintiff was not performing but would not identify the individuals. *Id.* ¶ 65.

In June 2024, Plaintiff sought another year-long accommodation of full-time remote work and intermittent leave for MS-related medical appointments, treatment, and symptoms. *Id.* ¶¶ 62, 70. Plaintiff's physician once again certified that Plaintiff's condition required a full-time remote accommodation and noted that Plaintiff's condition may also result in periods of "acute exacerbation requiring additional time away for treatment and recovery." *Id.* ¶ 73. Wells Fargo did not respond to this accommodation request for approximately two months, nor did it provide Plaintiff with eligibility notices concerning FMLA leave or notice of rights. *Id.* ¶¶ 74-77. Plaintiff tried multiple times but was unable to reach her assigned Accommodations Management representative during June and July. *Id.* ¶¶ 78-79. In August 2024, the representative informed

Plaintiff that her renewed request had been reviewed and should be approved, pending final approval from Aquino. *Id.* ¶ 79.

However, on August 2, 2024, Plaintiff was informed that her year-long remote accommodation for full-time remote work was only approved through October 2024. Wells Fargo said it would be then begin implementing a gradual return-to-work schedule for her: November (once per week), December (twice per week), and January 2025 (thrice per week). *Id.* ¶ 81. The return-to-work schedule did not mention intermittent leave. *Id.* ¶ 82. Plaintiff inquired as to why her request for a one-year accommodation was only approved for a few months, and her representative stated Aquino was not approving full-time remote work, so she would have to gradually return to the office. *Id.* ¶ 86.

On or around August 9, 2024, Aquino placed Plaintiff on a formal corrective action and told her that she "should leave the company" because he was going to terminate her unless she demonstrated Auditor-in-Charge performance on two upcoming audits. *Id.* ¶ 93. But Plaintiff was assigned only to a staff role on these audits, which she alleges made it "impossible" to meet his expectations. *Id.* ¶¶ 95-96.

On September 9, 2024, with her MS symptoms having "severely deteriorated," Plaintiff was approved for short-term disability effective August 27, 2024. *Id.* ¶¶ 97-99. This was extended multiple times, and effective February 18, 2025, her claim transitioned into long-term disability. *Id.* ¶¶ 100-01. Plaintiff remains on long-term disability today. *Id.* ¶ 103.

On or around December 5, 2024, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on disability, as well as ADA retaliation. *Id.* ¶ 12. The EEOC issued a Determination and Notice of Rights to Sue on February 9, 2026, and Plaintiff timely brought this Action on May 8, 2026. *Id.* ¶¶ 12-13.

## III. DISCUSSION

As a preliminary matter, Wells Fargo contends that any conduct predating June 8, 2024, that could give rise to Plaintiff's claims is time-barred.[2] (Doc. No. 10 at 11-12). Plaintiff seems to accept this general principle but argues that activities prior to this date may still be used as "background evidence showing context, retaliatory animus, motive, and the escalation of Defendant's conduct." (Doc. 11 at 11).

The ADA incorporates Title VII's administrative enforcement scheme, including the requirement that a plaintiff exhaust administrative remedies by timely filing an EEOC charge identifying the alleged discriminatory conduct before initiating suit in federal court. *See Irvin v. Versatrim, LLC*, 737 F. Supp. 3d 297, 307 (E.D.N.C. 2024). In other words, "an employee cannot seek redress in federal court for an employer's alleged discriminatory conduct unless [s]he filed a[n EEOC charge] within 180 days after the alleged unlawful practice occurred." *Hospodor v. Burlington Indus., Inc.*, 205 F.3d 1333, 2000 WL 203933, at *1 (4th Cir. 2000) (citing *McCullough v. Branch Banking & Trust Co.,* 35 F.3d 127, 131 (4th Cir. 1994) (holding claims are time-barred in federal court if employee does not file a timely charge with the EEOC)) (additional citations and internal quotations omitted). The 180-day filing period begins when the employee is notified of the adverse employment action, not on the date that the action is scheduled to take effect. *See Ferrell v. FMR, LLC*, No. 5:18-CV-217-FL, 2019 WL 2253173, at *6 (E.D.N.C. Jan. 31, 2019), *report and recommendation adopted in part*, No. 5:18-CV-217-FL, 2019 WL 1578766 (E.D.N.C. Apr. 12, 2019) (citing *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980)); *see also Price v. Litton Bus. Sys., Inc.*, 694 F.2d 963, 965 (4th Cir. 1982). And "only incidents that

[2] Generally, FMLA claims are subject to a two-year statute of limitations. *See* 29 U.S.C. § 2617(c)(1) (2000). If the alleged FMLA violation is willful, the limitations period is extended to three years. *See* 29 U.S.C. § 2617(c)(2) (2000).

took place within the timely filing period are actionable." *Irvin*, 737 F. Supp. 3d at 308 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)) (additional citations omitted).

Because it is undisputed that Plaintiff filed her EEOC charge on December 5, 2024, she may not bring a claim that is based on conduct that occurred before June 8, 2024, which is 180 days before the EEOC charge. However, conduct that occurred before then may still be relevant as background evidence. In any event, the primary adverse employment action at issue here is the purported denial of accommodation, which was communicated to Plaintiff on August 2, 2024, *see* Compl. ¶ 81, well within the statute of limitations period. *See Price*, 694 F.2d at 965; *Delaware State College*, 449 U.S. at 258.

**A. Failure to Accommodate**

Wells Fargo first argues that Plaintiff's failure to accommodate claim should be dismissed. "The ADA prohibits an employer from discriminating against an employee with a disability if the employee can perform the essential functions of his job with "reasonable accommodation." *Hannah v. United Parcel Serv., Inc.*, 72 F.4th 630, 635 (4th Cir. 2023) (citing 42 U.S.C. §§ 12112(a), (b)(5), 12111(8)). To plausibly state a prima facie case for failure to accommodate, Lane must show: "(1) [she has] a disability within the meaning of the ADA; (2) the employer had notice of the disability; (3) with reasonable accommodation, [she] could perform the essential functions of the position; and (4) the employer refused to make such accommodations." *Equal Employment Opportunity Comm'n v. Manufacturers & Traders Tr. Co.*, 429 F. Supp. 3d 89, 103 (D. Md. 2019) (citing *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001)) (additional citations omitted). However, "an accommodation is not reasonable if it does not "enable[ ] the employee to perform the essential functions of the job." *Hannah*, 72 F.4th at 635 (citing *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995). An accommodation must also be "effective" in that the employee can

perform essential functions of the job and attain the same achievement, opportunity, and participation that non-disabled employees could in the same position. *See Merrill v. McCarthy*, 184 F. Supp. 3d 221, 236 (E.D.N.C. 2016); *Dieng v. Orkin, LLC*, 185 F.4th 107, 117 (4th Cir. 2026) (citing *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 400 (2002) ("An accommodation that an employer ultimately selects must be effective.")

Lane alleges that Wells Fargo failed to provide her with a reasonable accommodation when it imposed a return-to-work schedule and did not engage in a good faith interactive process. (Compl. ¶¶ 120-21). Wells Fargo argues that Lane's claim fails for two primary reasons: first, she was approved to work fully remote through October 31, 2024, followed by a return-to-work schedule; second, Lane was accommodated beyond August 27, 2024, when she went on disability leave.[3] (Doc. No. 10 at 8-9). Lane responds that she was not required to wait until the return-to-work schedule commenced to consider her accommodation denied and act accordingly. (Doc. No. 11 at 6-7). The Court agrees with Plaintiff.

The Court finds that Plaintiff has plausibly alleged that she was denied an accommodation. Lane worked remotely full time for several years without incident, and yet, in 2024, Wells Fargo cut off her accommodation. To be sure, offering an accommodation once does not guarantee it a second time, and employers may reconsider their position. But when an employer denies an

[3] The Court finds that Wells Fargo's other argument—that Lane was not a qualified individual with a disability—is wholly unpersuasive. In fact, Wells Fargo functionally conceded this point each time it approved Plaintiff's accommodation previously. It does not argue that any medical condition changed, or that the essential functions of her job changed. Instead, it argues that the Complaint does not allege enough facts to show she could perform the essential functions of her position because she went on disability leave. But the Complaint asserts the opposite. *See* Compl. ¶ 30 ("At all times relevant, and as demonstrated by her performance record, Plaintiff was able to perform the essential functions of her job with the telework accommodation."); ¶ 112 ("At all relevant times, Plaintiff was performing her job at a level that met and exceeded Defendant's legitimate business expectations.").

accommodation, especially after approving the same accommodation several times before, some justification is required. Here, Wells Fargo allegedly did not provide any.

Also, Wells Fargo's reliance on Lane taking disability leave as disqualifying is mistaken. The relevant period is when her accommodation was denied, not when, later and allegedly based, at least in part, on the denial, she went on disability leave. Wells Fargo offers no authority supporting its notion that an employee seeking disability leave negates a claim in the ADA context that she could work. Rather, caselaw is to the contrary. *See Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 797–98 (1999) ("Thus pursuit, and receipt, of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim. Nor does the law erect a strong presumption against the recipient's success under the ADA."). Resolving any potential contradiction between Lane's disability and ADA statements is a fact-intensive inquiry inappropriate at this stage of litigation.

The lengthy timeline offers more protection for Lane. She informed Wells Fargo of her MS diagnosis in Spring 2015, and in 2020, she sought an accommodation for full-time remote work, which Wells Fargo approved without raising any issues. She sought one-year extensions in 2021, 2022, and 2023, and Wells Fargo approved the accommodation each time. Notwithstanding this unbroken history, in 2024 Wells Fargo stated it was no longer approving full-time remote work and required her to gradually return to the office beginning in November 2024, even though Lane's physician stated remote work was medically necessary. Allegedly, there was no meaningful interactive process, no individualized assessment of Lane's conditions or exploration of alternative options, nor explanation why granting the accommodation would present an undue hardship to Wells Fargo.

Lane is also correct that several precedents[4] support her position that she need not wait until the schedule took effect to treat her accommodation as denied. Wells Fargo argues that these cases merely discuss when a claim accrues for purposes of the 180-day statute of limitations, not when the adverse employment action occurred. But Wells Fargo is conceptually and legally incorrect. Conceptually, Wells Fargo's theory is that there is a meaningful difference between when a claim is actionable, (i.e. accrues), for purposes of statute of limitations and when it is actionable pragmatically. But this cannot be. It would make no sense for an employee to receive notice of adverse employment action (e.g., denial of accommodation or termination) and have to wait a specified period before taking action—all while the clock runs on the claim.[5] And to the extent that Wells Fargo argues that its decision did not constitute a denial of accommodation because it temporarily allowed for remote work, the Court finds the argument unpersuasive.

Wells Fargo further argues that, under *Myers*, Wells Fargo was not required to wait an indefinite period until Lane could perform her duties with or without accommodation because the ADA's reasonable accommodations provisions are formulated in the present tense not the future tense. (Doc. No. 10 at 10). Plaintiff is correct that this misstates her allegations. Plaintiff did not ask Wells Fargo to wait until she could perform *without* the accommodation, rather she alleges that she was then *presently* able to perform *with* the accommodation, and the change to the accommodation was ineffective. (Doc. No. 11 at 9). Lastly, Wells Fargo relies on *Hannah v.*

[4] *Price*, 694 F.2d at 964-65; *A Soc'y Without a Name v. Virgina*, 655 F.3d 342, 348 (4th Cir. 2011); and *Cathey v. Wake Forest Univ. Baptist Med. Ctr.*, 90 F. Supp. 3d 493, 503-03 (M.D.N.C. 2015).

[5] To further illustrate the point, if Lane had filed the Complaint months later, Wells Fargo could conceivably have flipped its position, arguing instead that the claim is time-barred and Lane *should have* brought the claim sooner because she was on notice of the adverse employment action in August, regardless of the fact that it would not take effect until November. And, if a plaintiff finds new mitigating employment prior to the adverse action taking effect, the plaintiff should not be put to the choice of accepting the new employment or pursuing her legal claims.

*United Parcel Service*, 72 F.4th 630 (4th Cir. 2023) for the proposition that employers need not provide the exact accommodation requested. In *Hannah*, a truck driver with a temporary disability caused by hip bursitis requested a smaller truck because it had a softer suspension. *See id.* at 633. The court upheld the denial because the employer explained the accommodation was unreasonable because the smaller cargo capacity was insufficient for the job, and such a shortfall in capacity would require the job to take more than 9.5 hours, which violated the collective bargaining agreement. *See id.* at 636-36. *Hannah* is inapposite for several reasons, especially because she was able to perform her duties for several years with the requested accommodation so there is no showing that the accommodation was unreasonable.

In short, Lane requested a year-long remote-work accommodation; Wells Fargo denied it, offering three months instead.[6] This is plainly a denial. Therefore, the Motion will be denied as to Lane's failure to accommodate claim.

**B. ADA Retaliation**

Wells Fargo moves to dismiss Lane's claim of ADA retaliation, primarily because she did not suffer a materially adverse employment action. The Court agrees.

To establish a prima facie case for retaliation under the ADA, plaintiffs must show: "(1) [s]he engaged in protected conduct, (2) [s]he suffered [a materially] adverse action, and (3) a causal link exists between the protected conduct and the adverse action." *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012). A "materially adverse" action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Crawford v. Prince George's Cnty. Bd. of Educ.,* No. CV JKB-20-00048, 2023 WL 2600363 (D. Md. Mar.

[6] Even if Wells Fargo received credit for the two months it took to decide on Lane's accommodation, five months is still far from the twelve Lane requested and would constitute a denial as well.

21, 2023), *aff'd,* No. 23-1430, 2023 WL 6421010 (4th Cir. Oct. 2, 2023) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 70 (2006)). Plaintiffs must either present "sufficient direct and indirect evidence of retaliation or proceed under the *McDonnell Douglas* burden-shifting method." *Lashley v. Spartanburg Methodist Coll.*, 66 F.4th 168, 173–74 (4th Cir. 2023) (quoting *Smith v. CSRA*, 12 F.4th 396, 416 (4th Cir. 2021)) (additional citation omitted).

Lane alleges that multiple adverse actions—negative performance reviews, supervisor statements, threats of termination, and denying her accommodation renewal—were causally related to her protected activity of seeking accommodation renewal based on the temporal proximity and pretextual nature of documentation supporting performance reviews. (Compl. ¶¶ 135-44). Specifically, she argues the corrective action occurred just four days after she disputed the purported denial of her accommodation, and comments from her supervisor also support an inference of a material adverse employment action. (Doc. No. 13 at 11). In response, Wells Fargo argues that Lane's claims largely rely on time-barred events, and the only actions within 180-days of her EEOC charge do not plausibly state a claim for retaliation. (Doc. No. 10 at 11-12).

Lane does not plausibly allege she suffered a *material* adverse action. To be sure, Lane was placed on corrective action just a few days after she disputed the accommodation denial. But these are not the proper events to consider when determining temporal proximity. Rather, the period to measure temporal proximity begins with protected activity and ends with adverse employment action. Here, that period begins with Plaintiff's accommodation request in June 2024. But it does not end with her corrective training because corrective training is not a materially adverse employment action.[7] *See Blount v. Ajinomoto Health & Nutrition*, No. 5:20-CV-00356-FL, 2020

[7] Even if it were, there were multiple examples from various employees supporting a non-retaliatory reason for Plaintiff's corrective training and negative performance evaluations that Plaintiff cannot plausibly allege causation.

WL 6439167, at *3 (E.D.N.C. Aug. 14, 2020), *report and recommendation adopted*, No. 5:20-CV-356-FL, 2020 WL 5231489 (E.D.N.C. Sept. 2, 2020) ("[A] write up by itself "does not rise to the level of an adverse employment action.") (collecting cases). Instead, it ends with an adverse employment action, which, on these facts, did not occur. Although the Court finds that Lane stated a claim for denial of accommodation, this does not by itself support a claim of retaliation. *See generally Johnson v. Maryland Transit Administration*, No. CV CCB-19-2523, 2021 WL 809768, at *5 (D. Md. Mar. 2, 2021) (dismissing complaint and explaining that to allow an accommodation claim to form the basis of a retaliation claim would allow plaintiffs to "double dip").

In sum, the Complaint does not plausibly allege a material adverse employment action causally related to Lane's protected activity, so this claim will be dismissed.

**C. Hostile Workplace Environment**

Next, Wells Fargo moves to dismiss Lane's hostile workplace environment claim. To state a claim for hostile workplace environment, the Complaint must plausibly allege that, "(1) [she] is a qualified individual with a disability; (2) [she] was subjected to unwelcome harassment; (3) the harassment was based on [her] disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer." *Jessup v. Barnes Grp., Inc.*, 23 F.4th 360, 367 (4th Cir. 2022) (quoting *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 17 (4th Cir. 2001)). "Hostile environment claims are different in kind from discrete acts" of discrimination because "[s]uch claims are based on the cumulative effect of individual acts." *Reynolds v. Goshen Med. Ctr., Inc.*, No. 7:24-CV-1081-M-BM, 2025 WL 2490458, at *15 (E.D.N.C. July 28, 2025), *report and recommendation adopted*, No. 7:24-CV-1081-BO-BM, 2025 WL 2487782 (E.D.N.C. Aug. 28, 2025) (quoting *Nat'l R.R. Passenger Corp.*, 536 U.S. at 115).

"To demonstrate that harassment is 'based on' a disability, a plaintiff must show that 'but for' the employee's disability, he or she would not have been the victim of the discrimination." *Sood v. Tempur Sealy Int'l, Inc.*, No. 1:19-CV-01248, 2020 WL 5633356, at *3 (M.D.N.C. Sept. 21, 2020) (quoting *Pueschel v. Peters*, 577 F.3d 558, 565 (4th Cir. 2009)). The "critical" piece of the but-for analysis is whether a disabled plaintiff has been 'exposed to disadvantageous terms or conditions of employment to which [non-disabled employees] are not exposed.'" *Id.* (quoting *Mason v. Wyeth, Inc.*, 183 F. App'x. 353, 361 (4th Cir. 2006)).

To plausibly allege that harassment was "sufficiently severe or pervasive" to create a hostile work environment, Plaintiff must show not only that she perceived it to be hostile but also that "it was objectively hostile." *Reynolds*, 2025 WL 2490458, at *15 (quoting *Fox*, 247 F.3d at 178); *see also EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). Courts determine whether a reasonable person would perceive a workplace as objectively hostile by considering all the circumstances: the frequency; the severity; whether it was threatening, humiliating, or merely offensive; and its interference with work. *See Evans v. Int'l Paper Co.*, 936 F.3d 183, 192 (4th Cir. 2019) (citing *Sunbelt Rentals, Inc.*, 521 F.3d at 315). This is a "high bar," and incidents that merely "give rise to bruised or wounded feelings" will not clear this standard. *Id.* Workplaces are complex ecosystems that are not always "harmonious locales," so complaints must be premised on something more than rude treatment, callous behavior by supervisors, or routine differences of opinion or personality conflicts. *See Sunbelt Rentals, Inc.,* 521 F.3d at 315-16 ("Some rolling with the punches is a fact of workplace life.") (internal citations omitted).

Although severity or pervasiveness is often a question of fact, dismissal is appropriate where the complaint fails to allege facts that, if true, would meet this standard. *See Sunkins v. Hampton Roads Connector Partners*, 701 F. Supp. 3d 342, 352 (E.D. Va. 2023). And although

misconduct by a supervisor generally carries greater weight, *id.* at 354, the conduct must still meet the governing standard. *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 278 (4th Cir. 2015) (en banc) (describing the status of the harasser as a "significant factor").

The Complaint alleges that Wells Fargo caused Plaintiff to endure a "sustained campaign" of harassment because of her disability. Compl. ¶ 151. Specifically, she alleges that Aquino (1) repeatedly told her she was not doing her job and he was going to fire her; (2) refused to provide her a meaningful opportunity to respond to undisclosed performance concerns; (3) issued negative performance evaluations that were predetermined and contradicted by positive performance evaluations; (4) fabricated a year-end evaluation by copying her mid-year evaluation verbatim; (5) placed her on a formal corrective action plan that was impossible to perform; and (6) overrode the accommodations management team's decision and denied her accommodation. *Id.* ¶ 153. Wells Fargo argues that these facts amount to a personality dispute between Plaintiff and her supervisor and a dispute over her performance evaluations, neither of which rises to the level of a hostile workplace environment under Fourth Circuit precedent. (Doc. No. 10 at 16-17).

The Court agrees with Defendant for at least two reasons. First, with respect to the but-for analysis, the Complaint does not allege the negative evaluation was because of her disability. This flaw is fatal. *See Katz v. U.S. Dep't of Justice*, No. 1:20-CV-554, 2022 WL 2375162, at *5 (E.D. Va. June 30, 2022) (describing the flaw in the complaint of not pleading causation to be fatal). Instead, Plaintiff alleges that the evaluations were merely inconsistent with other positive performance feedback. Moreover, Lane does not attempt to explain the years long gap between Wells Fargo learning of her disability (in 2015) and the beginning of the purported campaign of hostility (in 2023).

Second, the Complaint does not allege conduct sufficiently pervasive or severe to state a claim for hostile workplace environment. To be sure, the Complaint plainly alleges that Lane subjectively perceived Aquino's conduct as hostile, including several instances of workplace discomfort that offended Plaintiff and made her feel "forced onto disability leave." (Doc No. 11 at 17); *see also* Compl. ¶ 156. However, the Court must focus on the objective component—whether a "reasonable person" in Lane's position "would have found the environment hostile or abusive." *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998)) (internal quotations omitted); *see also Irani v. Palmetto Health*, 767 F. App'x. 399, 416 (4th Cir. 2019).

The allegations in the Complaint fall short of severe or pervasive conduct and require dismissal. *See e.g.*, *Hakeem v. Mayorkas*, No. 1:24-CV-955 (RDA/WEF), 2025 WL 310123, at *8 (E.D. Va. Jan. 27, 2025) (granting dismissal and finding supervisor's referring to plaintiff as a "Special Case" and ignoring emails amounted "at most" to rude treatment or callous behavior); *Short v. Berryhill*, 2019 WL 4643806 (W.D.N.C. Sept. 24, 2019) (granting dismissal and finding supervisor placing employee on performance plan, repeatedly criticizing her performance, and sending a series of aggressive emails did not amount to severe or pervasive); *Buchhagen v. ICF Int'l, Inc.*, 545 F. App'x. 217, 219 (4th Cir. 2013) (per curiam) (affirming dismissal and holding supervisor yelling "mockingly," repeatedly harping on a mistake, snide comments, playing favorites, and unfairly scrutinizing employee's use of leave falls "far short of being severe" enough to establish an abusive environment); *but see Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994) (finding hostile work environment where over a period of six months, a supervisor massaged an employee's shoulders, stated he wanted to "make out" and "have his way" with her, falsely accused her of having an affair with a colleague, asked her about her underwear and birth control, and made comments about taking maternity leave); *Whitten v. Fred's, Inc.*, 601 F.3d 231, 243 (4th Cir.

2010), *abrogated on other grounds by Vance v. Ball State Univ.*, 570 U.S. 421 (2013) (finding two-day period consisting of verbal abuse and two incidents of supervisor pressing his genitals against plaintiff's body to be sufficiently severe).

Lane argues that *Sood v. Tempur Sealy Int'l, Inc.* stands for the proposition that the allegations may be viewed collectively to demonstrate a "sustained campaign" of hostility. (Doc. No. 11 at 17). But *Sood* is distinguishable. Lane argues that the employee in *Sood* was "repeatedly forced to work against medical restrictions, denied accommodations . . . and ultimately terminated shortly after returning" from leave. *Id.* But Lane was not forced to work against her restriction at any time, much less "repeatedly." *See Sood*, 2020 WL 5633356, at *3 (noting words "hostile work environment are not talismanic" but the alleged facts are the proper focus). And although the Court finds she was denied an accommodation, this occurred once. Moreover, in *Sood*, the degree to which the supervisor targeted the employee and specifically forced him to work against his medical condition was far more extreme than here. There, the day after the employee returned with a medical profile expressly prohibiting him from lifting objects over 20 lbs., the supervisor assigned him duties beyond the scope of his employment that required him to lift heavy mattresses that caused multiple injuries requiring medical leave at least twice. *See generally Sood*, 2020 WL 2533356, at *5. Again, Lane was never forced to work in the office against her medical condition, nor was she forced to do so in a manner that caused injuries that required multiple periods of medical leave.

In sum, the Complaint fails to state a claim for hostile workplace environment, even when construing it liberally and assessing all the allegations collectively. Therefore, the claim will be dismissed.

### D. FMLA Interference

Next, Wells Fargo moves to dismiss Plaintiff's claim for FMLA interference.

The FMLA "grants valuable leave and restoration rights to eligible employees," *Hannah P. v. Haines*, 80 F.4th 236, 244 (4th Cir. 2023) (quoting *Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005)), and it safeguards those rights by making it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the statute. 29 U.S.C. § 2615(a)(1). "Actionable interference exists where the employer impedes, restrains, or denies the exercise of any rights protected by the FMLA." *Fortune v. Gaylor Elec., Inc.*, No. 1:19 CV 346, 2020 WL 6038295, at *4 (W.D.N.C. May 28, 2020), *report and recommendation adopted*, No. 1:19-CV-00346-MR-WCM, 2020 WL 3638132 (W.D.N.C. July 6, 2020) (citing *Reed v. Buckeye Fire Equip.*, 241 F. App'x. 917, 924 (4th Cir. 2007) (citing 29 C.F.R. § 825.220(a)). To succeed on an FMLA interference claim, "an employee must prove, as a threshold matter, that the employer violated § 2615 by interfering with, restraining, or denying his or her exercise of FMLA rights. *Even then, § 2617 provides no relief unless the employee has been prejudiced by the violation*:" *Hannah P.*, 80 F.4th at 244 (quoting *Ragsdale*, 535 U.S. at 89) (emphasis provided in *Hannah P.*). However, an employer cannot "interfere" with an employee's FMLA leave if the employee has taken the leave they were entitled to take. *Bigelow v. Syneos Health, LLC*, No. 5:20-CV-28-D, 2020 WL 5078770, at *3 (E.D.N.C. Aug. 27, 2020) (collecting cases). In other words, an FMLA interference claim arises when a defendant interferes with the "*provision* of [the FMLA] benefit." *Id.* (emphasis added).

Also, when the alleged harm involves adverse employment action, "an employer may avoid liability if it shows it would have taken the contested adverse employment action regardless of the

employee's FMLA leave." *Hannah P.*, 80 F.4th at 244 (quoting *Roberts v. Gestamp West Virginia, LLC*, 45 F.4th 726, 732-33 (4th Cir. 2022)). Put differently,

> "once an employee has met her burden to prove that an employer's FMLA interference caused the alleged adverse employment action, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the action taken. The employer has the burden to show that it would have made the same employment decision independent of the FMLA interference. But it is the employee who retains the ultimate burden of proof to demonstrate that the employer's actions did, in fact, interfere with the employee's FMLA rights and directly cause the alleged harm." *Id.*

When the injury results from an alleged absent or deficient eligibility notice of rights under the FMLA, plaintiffs may recovery when "the employee is prejudiced such that he is 'unable to exercise [the right to FMLA leave] in a meaningful way.'" *Owens v. Northwood Ravin, LLC*, No. 321-cv-00373FDWDCK, 2022 WL 17970211, at *5 (W.D.N.C. Dec. 27, 2022) (quoting 29 C.F.R. § 825.300). Such prejudice exists when an employee "loses compensation benefits 'by reason of the violation,'; sustains other monetary losses 'as direct result of the violation,'; or suffers some loss in employment status remediable through 'appropriate' equitable relief." *Id.* (quoting *Reed v. Buckeye Fire Equipment*, 241 F. App'x. 917, 924 (4th Cir. 2007)).

The Complaint alleges that Wells Fargo interfered with Plaintiff's ability to exercise her rights under the FMLA by (1) "subjecting her to a litany of negative performance reviews within months of returning from FMLA leave," (2) failing to respond to her request for intermittent leave for two months, and (3) not providing her with eligibility notice or written notice of rights and responsibilities as required by 29 C.F.R. § 825.300. Compl. ¶¶ 169-174. The Complaint further alleges that Wells Fargo failed to engage in any meaningful process regarding the intermittent leave component of her accommodation request. *Id.* ¶ 176. Wells Fargo argues that Lane was not entitled to written notice of her FMLA rights and, even if she were, the Complaint does not allege that she was prejudiced by the purported deficiency. (Doc. No. 10 at 18). Wells Fargo further

argues that Lane cannot repurpose her FMLA retaliation claim into an interference claim. *Id.* at 20.

The Court agrees with Wells Fargo. To begin, Lane was not denied FMLA leave. In fact, she applied for, was approved for, and took approximately seventeen weeks—more than the statutorily guaranteed amount—of FMLA leave from November 12, 2022, to March 13, 2023.[8] Compl. ¶ 40. Nor does the Complaint allege that Wells Fargo interfered with or denied her taking short-term disability leave in September 2024. Instead, Lane argues that during the period of her requesting an accommodation in June 2024 and departing on disability leave in September 2024, Wells Fargo delayed in deciding her accommodation and, when it did, it failed to address the intermittent leave portion.

Also, the Complaint does not allege facts supporting an inference that Lane was entitled to the notice in the first instance. The FMLA regulation only requires that notice is provided "at the commencement of the first instance of leave for each FMLA-qualifying reason in the applicable 12-month period. All FMLA absences for the same qualifying reason are considered a single leave and employee eligibility as to that reason for leave does not change during the applicable 12-month period." 29 C.F.R. § 825.300. Accordingly, because Plaintiff's approved FMLA leave from November 2022 to March 2023 was the "first instance," and the qualifying reason did not change in June or July 2023, Lane's eligibility did not change; so, she was not entitled to notice of FMLA rights. In other words, Wells Fargo was not required to provide notice of rights in June or July

---

[8] The statute authorizes employees twelve weeks of FMLA leave during a period of twelve months. But Congress encouraged employers to allow for more leave where appropriate. *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 87 (2002) (quoting § 2653) ("Nothing in this Act . . . shall be construed to discourage employers from adopting or retaining leave policies more generous than any policies that comply with the requirements under this Act."). Wells Fargo does not argue that Lane was ineligible for further leave, so the Court will assume Lane was entitled to FMLA leave during the relevant period.

because Lane's eligibility did not change. The Complaint does not allege that this renewal request should have been covered by a new 12-month period, which would have entitled her to a notice of rights.

Lane argues that under *Vannoy v. Fed. Rsrv. Bank of Richmond*, she states a claim based on Wells Fargo's purported failure to provide notice. 827 F.3d 296 (4th Cir. 2016) (denying summary judgement on interference claim where employer allegedly failed to provide notice of rights under FMLA). She argues she was deprived of information that prevented her from making informed decisions, which is sufficient to show prejudice under *Vannoy*. Not so. The employee in *Vannoy* clearly demonstrated prejudice flowing from the notice violation because after knee surgery, he returned before his convalescent leave expired to preserve his job *because* the notice did not state his job was protected as was required by law; had the notice provided this required confirmation, he would not have returned early from leave. *See id.* at 302-03.

But here, the Complaint does not allege facts sufficient to establish Lane was prejudiced by any purported deficiency. The Complaint states only that Defendant's failure to provide her with notice of her rights and responsibilities "prevented her from making fully informed decisions." Compl. ¶ 175. But while this *may* give rise to prejudice, stating this bare assertion does not elevate the claim to the plausibility standard. *See Fortune*, 2020 WL 6038295, at *2 (dismissing FMLA interference where complaint lacked factual support for failed notice requirement). For example, the Complaint does not allege how Lane could have exercised her federal leave rights differently nor when she would have otherwise done so. Nor does the Complaint allege that the final outcome—Lane taking disability leave—would have been different had she received rights and responsibilities from Wells Fargo in June or July 2024. *See Owens*, 2022 WL 17970211, at *6 (finding the complaint did not allege the absence of notice had a negative impact on employee's

decision-making ability). Further, Lane does not allege that prior to taking disability leave, the absence of eligibility notice deterred her in any way from exercising her rights. The Complaint states that she took disability leave because she was being forced to return to work in person, which she could not safely do because of her disability. Based on that reasoning, the notice of rights would not have meaningfully affected her decision-making process.

In sum, the Complaint fails to state a claim for FMLA interference because it does not allege Lane was entitled to receive notice of FMLA rights and responsibilities nor prejudiced by not receiving them. So, this claim will be dismissed.

**E. FMLA Retaliation**

Finally, Wells Fargo moves to dismiss Lane's claim for FMLA retaliation for the same reasons it moved to dismiss ADA retaliation. And this retaliation claim meets the same fate.

To establish a prima facie case of FMLA retaliation, a plaintiff must show that (1) she engaged in "protected activity"; (2) "her employer took an adverse employment action against her"; and (3) a causal connection exists between the protected activity and the adverse action. *Boyer-Liberto*, 786 F.3d at 281. Unlike FMLA interference claims, employer intent is relevant in an FMLA retaliation claim. *See Waag v. Sotera Def. Sols., Inc.*, 857 F.3d 179, 191 (4th Cir. 2017). Plaintiffs may prove causation based on temporal proximity between employer's knowledge of an employee engaging in protected activity and the employer's adverse employment action toward the employee, but the temporal proximity "must be very close." *Clark Cnty. School Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

When direct evidence of retaliatory intent is lacking, a plaintiff may rely on circumstantial evidence, which courts evaluate under the *McDonnell Douglas* burden-shifting framework.[9] *Waag*, 857 F.3d at 191 (citing *Vannoy*, 827 F.3d at 304). Under *McDonnell Douglas,* once a plaintiff establishes a prima facie case, "a presumption of retaliation arises and the 'burden of production then shifts to the employer to rebut the . . . presumption of retaliation and provide [a] legitimate, nondiscriminatory reason for the adverse employment action.'" *Id.* (quoting *Sharif v. United Airlines, Inc.*, 841 F.3d 199, 203 (4th Cir. 2016)). If the employer does so, the burden returns to the plaintiff to show that the "proffered explanation is merely a pretext for [retaliation]," either because it is not credible or because retaliation is the more likely explanation. *Id.* at 191-92 (quoting *Sharif,* 841 F.3d at 203). "[A]t the pleading stage, a plaintiff does not need to specifically articulate every element of the prima facie case under *McDonnell Douglas*, which is an evidentiary standard, not a pleading requirement.'" *Kelly v. City of Charlotte, N. Carolina*, No. 3:24-CV-0008, 2025 WL 2180666, at *7 (W.D.N.C. May 31, 2025), *report and recommendation adopted*, No. 3:24-CV-8-MOC-SCR, 2025 WL 2177192 (W.D.N.C. July 31, 2025) (citation omitted).

Plaintiff alleges FMLA retaliation based on two sets of actions: first, the close temporal proximity between her taking FMLA leave from November 2022 to March 2023 and the first negative performance evaluation in July or August 2023, followed by an "escalating pattern" of negative performance evaluations, which she describes as "pretextual." Compl. ¶ 186. Second, she alleges that Aquino's "campaign of hostility" included a negative rating in her 2024 mid-year review after she submitted her June 2024 accommodation renewal and notice of intermittent leave.

[9] The Fourth Circuit treats FMLA claims alleging retaliation as analogous to those derived under Title VII. Accordingly, FMLA retaliation claims are evaluated under the same burden-shifting framework that governs Title VII discrimination and retaliation claims. *See Laing v. Fed. Express Corp.*, 703 F.3d 713, 717 (4th Cir. 2013); *Yashenko v. Harrah's N.C. Casino Co.*, 446 F.3d 541, 546 (4th Cir. 2006)).

*Id.* ¶ 62. Lastly, Lane argues that because she alleges that Defendant acted willfully, the three-year statute of limitations applies to her FMLA claims.[10] (Doc. No. 11 at 21 n.4). Wells Fargo argues that many of the purportedly retaliatory acts are not materially adverse as a matter of law and, with regard to the 2023 allegations, the temporary proximity is too extended to support an inference of causation. (Doc. No. 10 at 21). The Court agrees with Wells Fargo.

The Court finds that the Complaint does not plausibly allege retaliation under the FMLA. As to the first pairing of alleged protected conduct and adverse action—FMLA leave from November 2022 to March 2023 and the June 2023 negative performance review—these are too distant in time. As Defendant points out, the Complaint's only attempt to connect these events is by temporal proximity. But 3-4 months by itself is too distant to support this inference. *Compare Silva v. Bowie State University*, 172 F. App'x. 476, 478 (4th Cir. 2006) (holding ten-week gap established causation); *with Pascual v. Lowe's Home Centers, Inc.*, 193 F. App'x. 229, 233 (4th Cir. 2006) (holding 3-4 months too long to establish causal connection by temporal proximity alone).

This claim also cannot move forward because Plaintiff cannot establish willfulness, which is required because the conduct occurred earlier than June 8, 2024, the two-year cutoff period. A willful violation is shown when an employer knew or showed reckless disregard regarding whether its conduct was prohibited. *See Settle v. S.W. Rodgers Co.*, 182 F.3d 909 (4th Cir. 1999) (citing

[10] Notably, the Complaint only mentions willfulness under the FMLA interference cause of action. *See* Comp. ¶ 179 ("Defendant's violation of the FMLA . . . was willful, lacking good faith, and in reckless disregard for Plaintiff's rights under the FMLA."). The Complaint does not otherwise mention willfulness, recklessness, or the statute of limitations. Defendant disputes that Plaintiff has alleged willfulness. (Doc. No. 10 at 17 n.12). Construing the Complaint liberally on a motion to dismiss, the Court finds that the Complaint adequately pleads the extended limitations period applies and will assess Wells Fargo's actions prior to June 8, 2024, under a willfulness standard. Plaintiff need not prove willfulness for conduct after June 8, 2024, i.e., related to her accommodation renewal with intermittent leave.

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132-35 (1988). The Complaint does not satisfy this burden even at the pleading stage because it offers only a legal conclusion without any factual support. *See Twombly*, 550 U.S. at 555 (holding "factual allegations must be enough to raise a right to relief above the speculative level); *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, "[C]ourts are not 'a kind of super-personnel department weighing the prudence of employment decisions.'" *Sharif*, 841 F.3d at 206 (quoting *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)).

Turning to the second set of alleged retaliatory conduct, the Court finds that the Complaint does not plausibly allege that Aquino's negative rating in Plaintiff's 2024 mid-year review was because she submitted an accommodation renewal that included potential FMLA leave. First, Plaintiff's accommodation requests sound in ADA not FMLA, and she had submitted this same request several years in a row without any alleged retaliation. Second, and more importantly, the alleged retaliatory actions preexisted the protected activity. The Complaint admits that Lane received negative performance reviews—including "Inconsistently Meets Expectations"—the year prior in July or August 2023. Comp. ¶ 42. And just two months prior to her mid-year review, Lane received an Informal Warning for Performance in April 2024. *Id.* ¶ 57. As a temporal matter, an employer's action cannot be based on something that occurred after the employer's action, and when the chain of events includes employer actions on both sides of purported protected activity that allegedly triggered the adverse action, an FMLA retaliation claim fails. *See Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.").

In sum, the Complaint does not plausibly allege FMLA retaliation for either set of allegations because the actions do not rise to the level of willfulness in the first instance, and the temporal connection in the second instance is too attenuated or otherwise devoid of factual support. This claim will therefore be dismissed.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant's Motion to Dismiss (Doc. No. 9) is **GRANTED as to Counts II-V and DENIED as to Count I (Failure to Accommodate)**; and
2. This case shall **proceed towards trial on the merits on the remaining claim** in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: October 19, 2026

Kenneth D. Bell
United States District Judge